Cozart Packing Company, Inc. v. Commissioner.
Cozart Packing Co. v. Commissioner
Docket No. 3936-70. T.C. Memo. 1972-175.
United States Tax Court
T.C. Memo 1972-175; 1972 Tax Ct. Memo LEXIS 81; 31 T.C.M. (CCH) 867; T.C.M. (RIA) 72175; August 16, 1972, Filed. Tried in Durham, North Carolina. *81 Held: Reasonable compensation determined. Stanley Worth, Brawner Bldg., 888 Seventeenth St., Washington, D. C., for the petitioner. Frank D. Armstrong, Jr., for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined the following deficiencies in the income tax of petitioner: Year
Deficiency
1966
$2,895.26
1967
1,452.00
1968
3,484.80 The deficiencies all stem from respondent's disallowance of deduction in each year of $6,600 of $9,000 paid as salary by petitioner to Robert T. Cozart, Jr. Findings of Fact Some of the facts have been stipulated and they are so found. Petitioner is Cozart Packing Company, Inc., which is a North Carolina Corporation whose principal office and place of business at all relevant times was in Goldsboro, North *82 Carolina. Petitioner filed its tax returns for the calendar years 1966, 1967, and 1968 with the district director of internal revenue, Greensboro, N.C. Petitioner was organized by Robert T. Cozart, Sr., and his wife Mildred J. Cozart (Mildred J. Foster during the years in issue) in 1946. Petitioner is primarily engaged in the processing and the wholesale distribution of meat and meat products in Goldsboro, North Carolina, and surrounding localities. Prior to its incorporation petitioner was operated as a partnership. 868 Robert T. Cozart, Sr., died on July 11, 1958. A special meeting of the board of directors was held on August 16, 1958. The following is an abstract of a part of the minutes of the meeting: Mr. Worth stated that in view of the long experience which Mrs. Cozart had had in the business affairs of the corporation and the partnership which preceded it, it was his opinion that she should assume active control of the operations of the corporation as president. He also suggested that Mr. R. T. Cozart, Jr., though residing in Tampa, Florida, could maintain a close contact with the business through receipt of monthly statements and frequent visits to Goldsboro * *83 * *. * * * FURTHER RESOLVED that R. T. Cozart, Jr., will be reimbursed by the corporation for any travel expenses incurred by him in travelling from Tampa to Goldsboro on business matters of the corporation, upon presentation of vouchers covering such expenses. At the same meeting Robert T. Cozart, Jr., was elected vice president and secretary FURTHER RESOLVED that R. T. Cozart, Jr., will be reimbursed by the corporation for any travel expenses incurred by him in travelling from Tampa to Goldsboro on business matters of the corporation, upon presentation of vouchers covering such expenses. At the same meeting Robert T. Cozart, Jr., was elected vice president and secretary with a stipulated salary of $9,000 a year, and Mildred J. Cozart was elected president with a stipulated salary of $12,000 a year. Robert T. Cozart, Jr. (hereinafter Robert) an only child, was born in Raleig, N.C., in 1923 and moved to Goldsboro, N.C., with his family in 1925. In 1942, he graduated from the University of North Carolina at Chapel Hill, where he studied business administration, and went from there into military service. Upon his release from active duty, he returned to graduate school and *84 later went into the garment manufacturing business in Goldsboro. In 1947 he moved to Tampa, Fla., where he has resided since that time. Robert is married and has five children, ranging in ages from approximately 10 to 22. During the taxable years in issue, the officers of petitioner were as follows: Mildred J. Foster - president and treasurer; and Robert T. Cozart, Jr. - vice president and secretary. The board of directors also consisted of these same individuals and Stanley Worth, who has been a director since July 16, 1958. At all times material, the board of directors has consisted of Mildred J. Foster, Robert T. Cozart, Jr., and Stanley Worth. For all years involved, petitioner had 760 shares of $100 par value common stock outstanding held as follows: No. of
% of Stock
Shareholder
Shares
Ownership
Mildred J. Foster
590
78%
Robert T. Cozart, Jr. 170
22%
Total
760
100%
Mildred J. Foster (hereinafter Mildred) assumed active management of the petitioner after the death of Robert T. Cozart, Sr., and has conducted the day-to-day operations of the business since that time. In 1968, the petitioner made reimbursements to Robert for transportation *85 expenses as follows: Date
Amount
February 3
$100
February 28
100
April 18
130
August 19
110
November 13
105
During the taxable years in issue Robert received from the petitioner weekly sales reports and monthly profit and loss statements. Said reports and statements were customarily discussed between Mildred and Robert either in person or by telephone. Although Robert was engaged in his own business in Tampa, he took an active interest in the affairs of petitioner. He was responsible for instituting changes which modernized and improved the performance of petitioner's plant and equipment. As a result of his suggestions, petitioner instituted a profit sharing bonus plan for petitioner's employees and an incentive compensation plan for petitioner's salesmen. Robert's interest and attention to petitioner's business contributed to a 30 percent increase in petitioner's gross sales during the period from 1958 through 1968. During the same period, petitioner's net income also increased from $4,600 to $27,800. Robert's family did not accompany him on his trips from Tampa to Goldsboro. Robert's trips to Goldsboro every two or three months were usually of three *86 or four days' duration. Prior to his father's death, Robert took no active part in the operation or management of the business. During the taxable years 1966 and 1967, the petitioner paid no cash dividends. It paid a cash dividend of $15 per share in 1968, pursuant to action taken at a joint 869 meeting of the stockholders and directors held February 27, 1968. On its income tax returns for each of the calendar years 1966, 1967, and 1968, petitioner deducted salary expense for salary paid to Robert in the amount of $9,000. Respondent in his notice of deficiency disallowed this deduction to the extent of $6,600 each year as excessive compensation. Opinion Section 162 limits deductions for salaries to a reasonable allowance. Unfortunately, determining the reasonableness of a salary paid an employee is an inexact science, and we can at best make only an estimation from all of the facts in the record. (C.A. 4, 1945); , affd., (C.A. 10, 1967). Respondent determined that $2,400 was a reasonable allowance for Robert's salary during the years *87 involved here, and his determination carries a presumption of correctness which petitioner must rebut. . Respondent relies upon the facts that Robert spent only a few days per year in Goldsboro attending to petitioner's business and that Robert had no particular expertise in the packing business to support his determination. Respondent contends that Robert's contribution to the success of petitioner's business was minimal and that his efforts to improve and modernize petitioner's operations constituted no more than the actions of a prudent shareholder protecting his investment. Petitioner, on the other hand, points out that Robert's college training in business administration made him useful for petitioner's modernization program and that his contacts with the business both on the telephone and in person were too frequent and regular to constitute mere concern by a shareholder for the success of his business investment. On balance, we tend to agree with petitioner. In addition, we cannot ignore, as respondent urges, all the testimony presented at trial merely because each witness had an interest in petitioner *88 either as an employee or shareholder. The witnesses were credible, and their testimony tended to show without contradiction that Robert was largely responsible for the modest improvement in petitioner's gross sales and net profits which has occurred since 1958. Taking everything in the record into consideration, we find that respondent's allowance of $2,400 per year as salary for Robert to be erroneous; however, we believe that petitioner has overstated the extent of the improvement in its operations due to Robert's efforts and that the $9,000 paid to Robert as salary in each year was somewhat excessive. Accordingly, we hold that a reasonable salary for Robert would have been $5,000 per year. This salary figure in our opinion more nearly reflects Robert's worth to petitioner's business than either figure urged by the parties. Decision will be entered under Rule 50.